Breck E. Milde (State Bar No. 122437)
bmilde@terralaw.com
Andrew J. Ditlevsen (State Bar No. 284911)
aditlevsen@terralaw.com
TERRA LAW LLP
177 Park Avenue, Third Floor
San Jose, California 95113
Telephone: (408) 299-1200
Facsimile: (408) 998-4895

Attorneys for Plaintiffs
Mark Micheletti and Susan Micheletti

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>DANIEL JOSEPH SHAW and AMBER JUNE McCLAIN SHAW aka DANIEL J. SHAW and aka AMBER JUNE McCLAIN,<br><br>Debtors. | Case No. 15-50656 SLJ 7<br><br>Chapter 7<br><br>Adv. Proc. No.<br><br>**COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT** |
| MARK S. MICHELETTI AND SUSAN M. MICHELETTI, as Trustees of THE MICHELETTI FAMILY TRUST UTD 9/15/04,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL JOSEPH SHAW aka DANIEL J. SHAW,<br><br>Defendant. | |

Plaintiffs Mark Micheletti and Susan Micheletti, as Trustees of the Micheletti Family Trust UTD 9/15/04 ("plaintiffs" or the 'Michelettis"), allege as follows:

## COMMON ALLEGATIONS

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(a).

2. Venue properly lies in the Northern District of California pursuant to 28 U.S.C. § 1409(a).

3. This adversary proceeding is a core proceeding as that term is defined at 28 U.S.C. § 157(b)(2)(I), and this Court may enter a final judgment therein.

4. Plaintiffs are individual residents of Santa Clara County and are Trustees of the Micheletti Family Trust, UTD 9/15/04.

5. At all times relevant hereto, defendant Daniel Shaw ("defendant" or "Shaw") was the President of RMRF Enterprises, Inc. a California Corporation, doing business under the name "Cupertino Capital." At all times relevant hereto, Shaw was the Designated Officer for Cupertino Capital's real estate broker license from the California Department of Real Estate.

6. At all times relevant hereto, Shaw was the President of BDS Capital, Inc. ("BDS") a California Corporation, which, at all times relevant hereto, had the same principal place of business as Cupertino Capital.

7. At all times relevant hereto, Cupertino Capital, through Shaw, was in the business of soliciting, brokering, offering, arranging, and servicing real-estate related loans. At all times relevant hereto, Cupertino Capital, solicited investors, including plaintiffs, for certain real estate loans. Once sufficient investors were found to fund a particular loan, Cupertino Capital used the investors' money to lend money to a borrower, typically to purchase, refinance, and/or improve the borrowers' real property. The loans were to be secured by the property. Cupertino Capital transferred the Deed of Trust or other security interest in the property to BDS (or other companies controlled by Cupertino Capital) as trustee. Thereafter, Cupertino Capital acted as the advisor, manager and servicing agent for the investors with regard to collecting payments on the debt and otherwise servicing the investors' loans.

8. Plaintiffs were long-time clients and customers of Cupertino Capital and Shaw, having invested in numerous loans via Cupertino Capital since prior to 2000.

9. Plaintiffs' normal course and practice with respect to investing with Cupertino Capital was as follows: (a) defendant Shaw would contact plaintiff Mark Micheletti with a proposed investment and summary information regarding the investment and the underlying real

4825-5431-7604, v. 1                                    2
COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT

estate project; (b) if Micheletti was interested, he would request additional information, such as a full appraisal of the real estate; information about the loan terms; financial information from the borrower, et cetera, from Shaw and Cupertino Capital. Shaw would typically transmit a Loan Servicing Agreement to plaintiffs for their approval and execution at the same time as this additional information; (c) if, after reviewing the materials, Micheletti wished to invest in the deal, he would tell Shaw the amount he wished to invest; and (d) after execution of the Loan Servicing Agreement, plaintiffs would transfer funds to Cupertino Capital.

10. As a matter of prudence and necessity, plaintiffs' investments with Cupertino Capital prior to the loan at issue in this Complaint typically involved approximately one hundred thousand dollars ($100,000); their largest investment with Cupertino Capital at any time had been $250,000.

11. In or about October, 2006, one of plaintiffs' other investments (not brokered by Cupertino Capital but serviced by it) was paying out due to a refinancing of the underlying, seller-financed real property. Plaintiffs' proceeds from this sale payout were approximately eight hundred and fifty thousand dollars ($850,000.) These funds were in the control of Cupertino Capital, and Shaw, as the loan servicer.

12. On or about Friday, October 13, 2006, defendant Shaw transmitted to Mark Micheletti a solicitation for a proposed investment by plaintiffs in a loan offering for an individual named Jeannine N. Berman, purportedly to finalize the subdivision of certain residential real property in Vallejo, California. (This loan is hereinafter referred to as "the Berman Loan.") Shaw's solicitation consisted of an email and a one-page summary prospectus of the transaction.

13. Shaw's solicitation represented that the property had been entitled for subdividing into multiple lots for development and that the loan "funds are being used for engineering, plans, etc., to get to final [subdivision] map."

14. In fact, Shaw knew on October 13, 2006 that Ms. Berman had no intent to obtain a final subdivision map. He knew this because he had received and read a letter from Ms. Berman dated August 30, 2006 in which she stated unequivocally that "I have decided to sell to a builder/developer, now, with the approved tentative map..." and that "I would like to continue

moving forward with other investments by taking as much equity out of [the property] as I can." In other words, Shaw knew that Ms. Berman was seeking to "cash out" of her investment in the property.

15. Shaw did not inform plaintiffs of Ms. Berman's August 30, 2006 letter, and plaintiffs had no knowledge that this letter even existed until May 2009.

16. Despite knowing that Berman had no intent to obtain a final subdivision map on the property, and despite knowing that plaintiffs' typical investment in Cupertino Capital's deals was one hundred thousand dollars ($100,000) or less, Shaw proposed to plaintiffs that they invest eight and a half times that much, or $850,000, into the Berman Loan. This amount was the vast majority of the total loan amount of $900,000.

17. On or about October 13, 2006, Shaw caused $850,000 of plaintiffs' money to be transmitted to an escrow account to fund the Berman Loan, and the Berman Loan was settled and the escrow closed on or about October 17, 2006. A Deed of Trust encumbering the Vallejo property was eventually transferred to BDS.

18. Neither the transmittal of funds into escrow, nor the closing of the escrow and distribution of the funds, was known to – much less authorized by – plaintiffs until after the fact.

19. In or about the week of October 20, 2006, Shaw transmitted to plaintiffs a Loan Servicing Agreement for execution, along with a packet of purported disclosure documents, all of which were back-dated to October 16, 2006, the day before the close of escrow for the Berman Loan. The documents did not include a full appraisal of the Vallejo property or any financial information on the borrower, Ms. Berman. (Indeed, despite repeated demands, plaintiffs were not provided a full appraisal of the Vallejo property until 2008.) The documents also included a pre-checked box and back-dated to October 16, 2006 that stated "My investment in the transaction does not exceed 10% of my net worth, exclusive of home, furnishings and automobiles." Shaw knew plaintiffs financial situation and that the $ 850,000 proposed loan well exceeded the 10% limit.

20. Neither Mark nor Susan Micheletti ever executed and returned to defendant the Loan Servicing Agreement or the disclosure packet, nor indicated any assent to its terms.

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT

21. Immediately after learning that the bulk of their life savings was now invested in a single loan, without their consent, plaintiffs demanded that Shaw get them out of the Berman Loan and refund their loan proceeds.

22. Beginning in or about November 2006, Shaw responded to plaintiffs' demands to be removed from the Berman Loan by repeatedly assuring plaintiffs that there were other investors available to take plaintiffs' place on the Berman Loan.

23. In or about December 2006 and January 2007, Shaw told plaintiffs that there was no need to reduce plaintiffs' investment in the Berman Loan because the Vallejo property would be sold for a profit and all of plaintiffs' investment returned.

24. On or about February 2, 2007, Ms. Berman, the borrower, ceased making any payments on the Berman Loan. Defendant assured plaintiffs that he would pursue Ms. Berman and foreclose on the Vallejo property in order to protect plaintiffs' investment.

25. In or about June 25, 2007, Cupertino Capital, on behalf of itself, plaintiffs, and the other investors in the Berman Loan, filed a foreclosure action in Solano County Superior Court against Ms. Berman, case number FCS029780. Despite obtaining a summary judgment ruling in favor of the plaintiffs in that action on or about February 14, 2008, Cupertino Capital has failed, and continues to fail, to obtain a judgment in favor of the lenders, and has to date failed to return any of the plaintiffs' funds which were invested in the Berman Loan without plaintiffs' authorization or approval.

26. On October 9, 2009, plaintiffs filed an action against Shaw, and RMRF Enterprises, dba Cupertino Capital, in the Santa Clara County Superior Court, case no. 109CV154522, based on the acts hereinabove alleged. On or about October 16, 2013, plaintiffs and said defendants, including Shaw, entered into a stipulation whereby Shaw agreed that judgment be entered against him in the amount of $1,347,840.00, including costs and attorneys' fees.

27. Shaw filed his voluntary petition under chapter 7 of the United States Bankruptcy Code in this case on February 27, 2015. In defendant's Schedule D, filed concurrently with his voluntary petition, defendant listed a judgment in the amount of $1,346,947 in favor of plaintiffs as of October 21, 2013.

4825-5431-7004, v. 1                                    5
COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT

# FIRST CLAIM FOR RELIEF

**(For Determination of Non-Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(A))**

28. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth in the foregoing paragraphs of this Complaint.

29. On or about October 13, 2006, defendant represented to plaintiffs that the Berman Loan was for the purpose of Ms. Berman's obtaining a final subdivision map for the Vallejo property.

30. On or about October 13, 2006, defendant represented to plaintiffs that Berman was a "small time developer" implying that she had the intent to develop the Vallejo property and had the experience to do so.

31. On or about October 13, 2006, defendant represented to plaintiffs that the loan-to-value ratio of the Berman Loan was a conservative 50%, but disclosed only select parts of the appraisal for the Vallejo property, omitting the portions of the appraisal that included the appraiser's faulty assumptions and flawed methodology.

32. On or about October 13, 2006, defendant misrepresented the development potential for the Vallejo property, and failed to disclose knowledge that he had regarding the City of Vallejo's conditions for issuing a final subdivision map, conditions which made the development far more expensive and were thus material to the value of the property.

33. On or about October 13, 2006, defendant represented to plaintiffs that Berman had good credit, although defendant never had ordered a credit report prior to the closing of escrow on the Berman Loan.

34. In or about October 2006, defendant represented to plaintiffs that represented he could "sell this loan all day long as it was very good deal."

35. In or about November 2006 through January 2007, defendant represented to plaintiffs that there were alternative investors who could reduce some or all of plaintiffs' investment in the Berman Loan, and that defendant was taking steps to reduce or eliminate plaintiffs' investment.

4825-5431-7004, v. 1

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT

36. At the time defendant made the above representations, defendant knew that each and every one was false.

37. Defendant made the representations to plaintiffs with the intent and purpose of deceiving plaintiffs and to induce plaintiffs to make the Berman Loan.

38. As a result of defendant's false representations, plaintiffs were induced to and did make the Berman Loan, and to take no steps to rescind or otherwise recover the funds that they has invested, involuntarily, in the Berman Loan.

39. In deciding to make the Berman Loan, plaintiffs reasonably and justifiably relied on defendant's representations. If plaintiffs had known the truth, plaintiffs would not have made the Berman Loan, and/or would have taken immediate action to rescind the loan, cancel escrow, and to recover their investment.

40. As a result of defendant's false representations, plaintiffs have been damaged in the amount of $1,346,947, in addition to interest thereon as provided by law, and attorneys' fees and legal costs.

41. Accordingly, the debt owed to plaintiffs by defendant is non-dischargeable pursuant to under 11 U.S.C. §523(a)(2)(A).

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

(For Determination of Non-Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(4))

42. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth in the foregoing paragraphs of this Complaint.

43. Defendant owed plaintiffs fiduciary duties arising to the level of that of a trustee as a result of the dominion and control exercised by defendant over plaintiffs' funds, which had been entrusted to him and his entity, Cupertino Capital, and also due to defendant's status as plaintiffs' agent and real estate broker.

44. Defendant diverted and misappropriated funds belonging to plaintiffs for defendant's improper use in violation of his fiduciary duties, as hereinabove alleged.

4825-5431-7004, v. 1

COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT

45. Said conduct by defendant was in breach of defendant's fiduciary duties owing to plaintiffs, defendant embezzled plaintiffs' funds that had been entrusted to him, and the debt owing to plaintiffs arose directly out of defendant's fraudulent and improper conduct.

46. As a result of defendant's fraud and defalcation while acting in his fiduciary capacity, and his embezzlement of plaintiffs' funds, plaintiffs have been damaged as hereinabove alleged.

47. Accordingly, the debt owed to plaintiffs by defendant is non-dischargeable pursuant to under 11 U.S.C. §523(a)(4).

WHEREFORE, plaintiffs pray for judgment as hereinafter set forth.

### THIRD CLAIM FOR RELIEF

**(For Determination of Non-Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(6))**

48. Plaintiffs reallege and incorporate herein by reference each and every allegation set forth in the foregoing paragraphs of this Complaint.

49. Defendant's conduct, as hereinabove alleged, constitutes willful and malicious injury to plaintiffs carried out by defendant.

50. Defendant's wrongful acts were done with the subjective motive to inflict injury or with the understanding that injury was substantially certain to occur as a result of his conduct. Defendant's wrongful acts were done intentionally and committed without just cause or excuse.

51. Defendant's wrongful conduct proximately caused injury to plaintiffs in that defendant misappropriated and diverted funds belonging to plaintiffs which were held in constructive trust for plaintiffs.

52. As a proximate result of defendant's willful and malicious conduct, plaintiffs have suffered damages as hereinabove alleged.

53. Accordingly, defendant's debt owed to plaintiffs is not non-dischargeable pursuant to 11 U.S.C. §523(a)(6).

WHEREFORE, plaintiffs pray for judgment as follows:

4825-5431-7604, v. 1                                                8
COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF DEBT

**PRAYER**

1. For a determination that the judgment and debt owed by defendant to plaintiffs is not dischargeable pursuant to 11 U.S.C. §523(a)(2)(A), and/or §523(a)(4), and/or §523(a)(6);

2. For attorneys' fees;

3. For plaintiffs' costs incurred herein; and

4. For such other and further relief as the Court deems proper.

Dated: June 1, 2015                        TERRA LAW LLP

By: /s/ Breck E. Milde
     Breck E. Milde
     Attorneys for Plaintiffs Mark Micheletti and
     Susan Micheletti, as Trustees of the
     Micheletti Family Trust UTD 9/15/04